**THE OWENSBORO NATIONAL BANK;** The First National Bank of Louisa; Citizens National Bank of Paintsville; Kentucky Bankers Association, Plaintiffs–Appellees,

United States of America, Intervening Plaintiff–Appellee,

v.

Don W. STEPHENS, Commissioner, Department of Insurance, Commonwealth of Kentucky, Defendant–Appellant (92–6330),

Kentucky State Association of Life Underwriters; Independent Insurance Agents of Kentucky, Inc.; Kentucky Association of Professional Insurance Agents, Intervening Defendants–Appellants (92–6331).

Nos. 92–6330, 92–6331.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 29, 1994.

Decided Dec. 29, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 15, 1995.

M.T. Senn (argued and briefed), Morgan & Pottinger, Louisville, KY, M. Brooks Senn, Kentucky Bankers Ass'n, Louisville, KY, for plaintiffs-appellees.

Joseph L. Famularo, U.S. Atty., Lexington, KY, Anthony J. Steinmeyer, Jacob M. Lewis (argued and briefed), Dept. of Justice, Appellate Staff, Civil Div., Rosa M. Koppel, Office of Comptroller of Currency, Paul W. Bridenhagen, Anne L. Weismann, Dept. of Justice, Washington, DC, for intervenor–appellee in No. 92–6330.

Stephen B. Cox (briefed), Kentucky Dept. of Ins., Frankfort, KY, Ann M. Kappler (argued and briefed), Jenner & Block, Washington, DC, for defendant-appellant.

Michael F. Crotty (briefed), American Bankers Ass'n, Washington, DC, for amicus curiae American Bankers Ass'n.

Joseph L. Famularo, U.S. Atty., Lexington, KY, Rosa M. Koppel, Office of Comptroller of Currency, Paul W. Bridenhagen, Anne L. Weismann, Dept. of Justice, Washington, DC, for intervenor-appellee in No. 92–6331.

Jonathan B. Sallet, Ann M. Kappler (argued), Ann M. Kappler, Jenner & Block, Washington, DC, Terrell L. Black, Larry R. Blanton, Black, Carle, Maze & Wilmes, Louisville, KY, for intervenors-appellants.

Before GUY and BATCHELDER, Circuit Judges; and McKEAGUE, District Judge.[*]

GUY, J., delivered the opinion of the court, in which McKEAGUE, D.J., joined. BATCHELDER, J. (pp. 393–99), delivered a separate dissenting opinion.

RALPH B. GUY, Jr., Circuit Judge.

Defendants, the Commissioner of the Kentucky Department of Insurance ("Commissioner") and various Kentucky insurance industry associations, appeal the district court's grant of summary judgment in favor of plaintiffs, which are national banks doing business in Kentucky towns with populations of fewer than 5,000 persons. The district court concluded that a Kentucky statute that bars bank holding companies from acting as insurance agents was preempted by a federal statute that allows national banks operating in towns of fewer than 5,000 persons to act as insurance agents. On appeal, defendants argue that the Kentucky statute, Ky.Rev.Stat. Ann. § 287.030(4) ("section 287"), does not conflict with the federal statute, 12 U.S.C. § 92, and that, in any event, the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq., and section 7 of the Bank Holding Companies Act, 12 U.S.C. § 1846, each "immunize" section 287 from preemption by § 92. We reject these arguments and affirm.

## I.

In late 1990, plaintiffs submitted to the Commissioner requests for applications for licenses to act as life and general line insurance agents in Kentucky. The Commissioner denied these requests, but scheduled a hearing before a state administrative law judge ("ALJ") on the issue of whether section 287 barred plaintiffs from acting as insurance agents. Before that hearing was held, however, plaintiffs filed this lawsuit, seeking declaratory and injunctive relief. A Kentucky state court thereafter granted plaintiffs' request for a stay of the administrative proceedings pending the outcome of this lawsuit. Meanwhile, a number of Kentucky insurance industry associations intervened on behalf of the Commissioner in this lawsuit. The United States intervened on behalf of plaintiffs. Defendants filed a motion to dismiss, arguing that the case was not justiciable because of the unfinished administrative proceeding before the ALJ. Plaintiffs then filed a motion for summary judgment, to which defendants responded by filing a cross-motion for summary judgment. In a published opinion, see 803 F.Supp. 24 (E.D.Ky.1992), the district court determined that the case was justiciable,[1] granted plain-

---

[*] Honorable David W. McKeague, United States District Court for the Western District of Michigan, sitting by designation.

[1.] Defendants have not raised any justiciability issues on appeal, and the district court appears to have decided them correctly.

tiffs' motion for summary judgment, and granted plaintiffs the relief they sought. This appeal followed.

## II.

■ Defendants first argue that section 287 is not preempted by § 92 under conventional preemption analysis. Section 287 provides:

> No person who after July 13, 1984, owns or acquires more than one-half (½) of the capital stock of a bank shall act as insurance agent or broker with respect to any insurance except credit life insurance, credit health insurance, insurance of the interest of a real property mortgagee in mortgage property, other than title insurance.

Ky.Rev.Stat.Ann. § 287.030(4). Section 92 provides:

> In addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, *may,* under such rules and regulations as may be prescribed by the Comptroller of the Currency, *act as the agent for any fire, life, or other insurance company* authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company; *and may receive for services so rendered such fees or commissions as may be agreed upon between the said association and the insurance company for which it may act as agent: Provided, however,* That no such bank shall in any case assume or guarantee the payment of any premium on insurance policies issued through its agency by its principal: *And provided further,* That the bank shall not guarantee the truth of any statement made by an assured in filing his application for insurance.

12 U.S.C. § 92 (emphasis added).

It is well settled that "the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). One of the ways in which a state law may "interfere" with a federal law is by coming into "actual[ ] conflict[ ]" with it, *i.e.,* by " 'stand[ing] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]' " *Id.* at 713, 105 S.Ct. at 2375.

The Supreme Court has applied this "actual conflict" standard in cases with facts similar to those presented here. In *Franklin National Bank v. New York*, 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed.2d 767 (1954), the Court considered whether a New York law that prohibited use of the word "savings" in advertising for banks other than state-chartered savings banks was preempted by a federal law that authorized national banks "to receive deposits without qualification or limitation, and ... [to] possess 'all such incidental powers as shall be necessary to carry on the business of banking[.]' " *Id.* at 376, 74 S.Ct. at 553. Although the federal law only implicitly permitted federal banks to use the word "savings" in their advertising, the Court concluded that there was "a clear conflict between the law of New York and the law of the Federal Government." *Id.* at 378, 74 S.Ct. at 554. Similarly, in *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the Court considered whether a California law that prohibited the inclusion of a due-on-sale clause in loan instruments was preempted by a federal regulation that expressly granted to federal savings and loans the power to include such clauses in loan instruments. Noting that the conflict between the state law and federal regulation did not "evaporate" because the "regulation simply permits, but does not compel, federal savings and loans to include due-on-sale clauses in their contracts[,]" *id.* at 155, 102 S.Ct. at 3023, the Court easily concluded that preemption was appropriate. *Id.* at 159, 102 S.Ct. at 3025.

The conflict between section 287 and § 92 is no different than those present in *Franklin National Bank* and *de la Cuesta.* For purposes of deciding the federal preemption issue only, the plaintiff national banks assumed as correct the Commissioner's position that section 287 applies not only to bank holding companies but also to subsidiaries thereof, such as national banks. Thus, while

§ 92 provides that national banks such as plaintiffs "may" act as insurance agents, section 287 provides that they "may not."

Seizing upon the permissive nature of the right created by § 92, however, defendants suggest that we should "reconcile" the two sections by construing the right created by § 92 to be subject to state law restrictions such as section 287. That construction might be plausible if § 92 provided that certain national banks *"may have the power"* to act as insurance agents. But § 92 actually states that certain national banks *"may,* under such rules ... as may be prescribed by the Comptroller of the Currency, *act as the agent for"* certain insurance companies. Providing that a bank "may act" is no different than providing that a bank *"shall have the power* to act." Thus, the language of § 92 does not permit the construction defendants advocate. That the power created by § 92 is permissive does not allow us to conclude that it does not exist.[2]

Defendants also contend that our construction of § 92 assumes that Congress acted with an "unconstitutional motive" in passing § 92, since the regulation of the business of insurance was understood to be beyond Congress's Commerce Clause powers when § 92 was passed in 1916. But § 92 in no way governs the manner in which the business of insurance is conducted; rather, it merely helps to define the powers of national banks. Congress has been understood to have the authority to define those powers since the Court's decision in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), so we reject defendants' contention.

Finally, we note that section 287 interferes with the realization of a chief object of § 92. That object is to increase the number of banks serving small towns by creating "additional sources of revenue" for such banks. Letter from Comptroller John Skelton Williams to Sen. Robert L. Owen, *reprinted in* 53 Cong.Rec. 11001 (1916). (App. at 159). Section 287 removes that source of revenue

and thus "create[s] 'an obstacle to the accomplishment and execution of the *full* purposes and objectives [of Congress].' " *de la Cuesta,* 458 U.S. at 156, 102 S.Ct. at 3024 (emphasis added). Like the district court, we conclude that, under conventional preemption analysis, § 92 preempts section 287.

■ Defendants next argue that the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.,* "immunizes" section 287.030(4) from preemption by § 92. The relevant portion of the McCarran–Ferguson Act provides:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012(b). Thus, section 287.030(4) is not preempted by § 92 if (1) section 287 was "enacted ... for the purpose of regulating the business of insurance," and (2) § 92 does *not* "specifically relate[ ] to the business of insurance."

We first consider whether section 287 was "enacted ... for the purpose of regulating the business of insurance." The "business of insurance" is made up of "practices" and "activities" that satisfy the criteria set forth in *Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Those criteria are:

*first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Id.* at 129, 102 S.Ct. at 3009.

Citing *United States Department of Treasury v. Fabe,* — U.S. ——, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), however, defendants contend that the *Pireno* criteria are "not applicable" to the determination of whether a

2. The United States emphasizes that, in a 1990 letter to the Louisiana Commissioner of Insurance, the Chief Counsel of the Office of the Comptroller concluded that the right created by § 92 is not subject to state law restrictions. Because we reach the same conclusion without

taking this letter into account, we need not determine whether such an informally expressed opinion is entitled to deference under the doctrine set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

state law was "enacted ... for the purpose of regulating the business of insurance." (Defendants' Brief at 24 n. 22.) We disagree. It is true that *Pireno* addressed the scope of the antitrust immunity arising under the second clause of § 1012(b). That clause provides an exemption from federal antitrust laws for activities that (1) are regulated by state law and (2) qualify as the "business of insurance." *See* 15 U.S.C. § 1012(b). Thus, "the first clause [of § 1012(b) ] commits laws 'enacted ... for the purpose of regulating the business of insurance' to the States, while the second clause exempts only 'the business of insurance' itself from the antitrust laws." *Fabe,* ―― U.S. at ――, 113 S.Ct. at 2209. Whether a particular activity is part of the "business of insurance" is, of course, a separate question from whether a state law was "enacted ... for the purpose of regulating the business of insurance." The *Fabe* Court accordingly noted that the latter question cannot be answered by reference to the *Pireno* criteria alone. But that does not mean those criteria simply are "not applicable" in cases involving the first clause of § 1012(b). If, in such a case, the issue arises of whether a particular activity is part of the "business of insurance," the *Pireno* criteria apply. *See Fabe,* ―― U.S. at ――, 113 S.Ct. at 2208 (noting, in considering claim that arose under first clause of § 1012(b), that *Pireno* "identified the three criteria ... that *are* relevant in determining what activities constitute the 'business of insurance.' ") (emphasis added). In short, the *Fabe* Court merely noted that the scope of the respective immunities created by the first and second clauses of § 1012(b) are different; it assuredly did not give "business of insurance" one meaning in the first clause and a different meaning in the second.

The *Fabe* Court went on to hold that "[t]he broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." ―― U.S. at ――, 113 S.Ct. at 2210. Thus, to have been "enacted ... for the purpose of regulating the business of insurance," section 287 must possess the aim of regulating activities that meet the *Pireno* criteria.

Section 287 does not possess such an aim. That section helps to define the powers of Kentucky bank holding companies by excluding such companies from participation in the activities that constitute the "business of insurance." Excluding a person from participation in an activity, however, is different from regulating the manner in which that activity is conducted. The former is the regulation of the person; the latter is the regulation of the activity. Section 287 only regulates persons owning "more than one-half (½) of the capital stock of a bank"; it in no way governs the manner in which the activities constituting the "business of insurance" are conducted. Section 287 thus is different in kind from the Ohio statute that was found to regulate the business of insurance in *Fabe,* since the Ohio statute set standards for "the actual performance of an insurance contract." ―― U.S. at ――, 113 S.Ct. at 2210. *See also United Servs. Auto. Ass'n v. Muir,* 792 F.2d 356, 364 (3rd Cir. 1986) (state law forbidding banks from being licensed as insurers "ha[d] no part in the business of insurance under McCarran–Ferguson"); *but see SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969) (stating in dicta that state laws governing "the licensing of [insurance] companies and their agents ... [are] within the scope of" McCarran–Ferguson).

Since we conclude that section 287 was enacted for the purpose of regulating certain conduct by bank holding companies, not the business of insurance, we need not consider whether § 92 "specifically relates to the business of insurance"; for, without regard to whether § 92 so relates, McCarran–Ferguson cannot save section 287 from preemption.

Defendants' remaining argument is that section 287 cannot be preempted by § 92 because "section 7 of the Bank Holding Company Act [12 U.S.C. § 1846] expressly reserves to the Commonwealth the authority to regulate bank holding companies, and their subsidiaries, through state regulation such as [section 287]." (Defendants' Brief at 28.) In making this argument, defendants ignore the plain language of § 1846, which provides:

No provision *of this chapter* shall be construed as preventing any State. from exercising such powers and jurisdiction

which it now has or may hereafter have with respect to companies, banks, bank holding companies, and subsidiaries thereof.

12 U.S.C. § 1846 (emphasis added). Here, § 92 is the provision that prevents Kentucky from exercising the power to enforce section 287. Section 92 is found in chapter 2 of title 12, while § 1846 is found in chapter 17 of that title. Since § 92 is a provision of a chapter other than the chapter in which § 1846 is found, § 92 may be construed to prevent Kentucky from exercising the power to enforce section 287. Section 1846 simply is irrelevant to this case.

**AFFIRMED.**

BATCHELDER, Circuit Judge, dissenting.

I disagree with the majority's decision affirming the district court in granting summary judgment and injunctive relief for the plaintiffs. Therefore, I respectfully dissent from the Court's opinion.

## I.

Defendants-Appellants present three central arguments in this appeal: (1) that Kentucky Revised Code § 287.030(4) ("section 287") is not preempted by 12 U.S.C. § 92 under traditional preemption analysis; (2) that the McCarran–Ferguson Act protects section 287 from preemption by § 92; and (3) that section 287 cannot be preempted by § 92 because of language contained in the Bank Holding Company Act (BHCA).

I agree with the majority's analysis of the first and third issues raised by the defendants. I respectfully disagree, however, with the majority's opinion on the issue of McCarran–Ferguson preemption. It is my belief that the McCarran–Ferguson Act does, in fact, shield the state statute, section 287, from preemption by the federal statute, § 92.

## II.

As the majority accurately states, the McCarran–Ferguson Act, 15 U.S.C. § 1012(b) (referred to hereafter as § 2(b)), protects section 287 from preemption by § 92 if two factors are satisfied. First, the state statute, section 287, must have been "enacted ... for the purpose of regulating the business of insurance." McCarran–Ferguson § 2(b). Second, the federal statute, § 92, must *not* "specifically relate[ ] to the business of insurance." *Id.* If both of these require-

ments are met, the state statute will not be preempted by the federal statute.

In this case, I believe both factors have been satisfied. First, section 287 was clearly enacted by the Kentucky legislature to regulate the business of insurance. Second, § 92 does not specifically relate to the business of insurance.

### A. *McCarran-Ferguson*

The McCarran–Ferguson Act was enacted by Congress in 1945 in response to the Supreme Court's decision in *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). In *South–Eastern Underwriters,* the Court held that regulation of interstate insurance activity was within the Commerce Clause power of Congress. *Id.* at 553, 64 S.Ct. at 1173. Congress responded adversely to the Court's decision, immediately enacting McCarran–Ferguson "to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation." *Securities and Exchange Comm'n v. National Secs., Inc.,* 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969).

Consistent with its view that the business of insurance is " 'a local matter, to be subject to and regulated by the laws of the several States,' " Congress explicitly intended the McCarran–Ferguson Act to restore state taxing and regulatory powers over the insurance business to their pre-*South-Eastern Underwriters* scope. *Western and Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 654, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514 (1981) (citing H.R.Rep. No. 143, 79th Cong., 1st Sess. 2 (1945)). Undeniably, the purpose of the McCarran–Ferguson Act was to "give support to the existing and future state systems for regulating and taxing the business of insurance." *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946).

Clearly, Article I, Section 8 of the United States Constitution grants Congress the power to regulate interstate commerce, including interstate insurance, if it so chooses. U.S. Const., Art. I, § 8, cl. 3; *see also South–Eastern Underwriters,* 322 U.S. at 539–45, 64 S.Ct. at 1166–69. It is nonetheless true that Congress may limit its own Commerce Clause power to grant the states "an ability to restrict the flow of interstate commerce that they would not otherwise enjoy." *Lewis*

*v. BT Inv. Managers, Inc.,* 447 U.S. 27, 44, 100 S.Ct. 2009, 2020, 64 L.Ed.2d 702 (1980). The enactment of the McCarran–Ferguson Act represents such a situation in which, once the Supreme Court held that the regulation of interstate insurance was within Congress's commerce power, Congress exercised its plenary power by enacting McCarran–Ferguson to limit its own power by providing for regulation by the states instead.

## B. Kentucky Section 287

Section 287.030(4) of the Kentucky Revised Code purports to prevent state or national banks from selling any insurance other than those narrow categories permitted by the statute. The applicable language of the statute reads:

> (4) No person who after July 13, 1984, owns or acquires more than one-half (½) of the capital stock of a bank shall act as insurance agent or broker with respect to any insurance except credit life insurance, credit health insurance, insurance of the interest of real property mortgagee in mortgaged property, other than title insurance.

Ky.Rev.Stat.Ann. § 287.030 (Baldwin 1987). In a 1970 opinion, the Kentucky Attorney General determined that the provision applied to state banks as well as national banks doing business in Kentucky. Ky.Op.Att'y Gen. 70–643 (1970).

Defendants contend that section 287 "falls squarely" within § 2(b)'s requirement that a state statute be enacted to regulate the business of insurance to escape preemption by federal law. The district court found, to the contrary, that the Kentucky statute was not enacted to regulate the business of insurance. *Owensboro Nat'l Bank v. Moore,* 803 F.Supp. 24, 36 (E.D.Ky.1992). The district court's holding was based in part on the location of section 287 in the chapter of the Kentucky Revised Statutes regulating banks and trust companies. The lower court also based its decision on the three-part test set out in *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). In its opinion, the majority also relied upon *Pireno* to determine what activities constitute the "business of insurance."

I respectfully disagree that the *Pireno* factors apply to this case. Rather, I believe that the defendants are correct that the Supreme Court's recent opinion in *United States Department of Treasury v. Fabe,* — U.S. —, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), sets the controlling criteria in this case. *See also Colonial Life and Accident Ins. Co. v. American Family Life Assurance Co.,* 846 F.Supp. 454, 459 (D.S.C.1994) ("while ... the *Pireno* criteria are relevant in determining the applicability vel non of the antitrust exemption, they are not determinative with respect to the first clause of Section 2(b)").

## C. Fabe and the application of § 2(b)

In *Fabe,* the Court held that an Ohio priority statute was saved from federal preemption to the extent that it regulated the relationship between an insurance company and its policyholders. *Fabe,* — U.S. at —, 113 S.Ct. at 2208. The Court, in its analysis, made an important distinction between the first and second clauses of § 2(b). According to the Court, the first clause deals with those state laws (such as section 287) enacted for the purpose of regulating insurance. The clause saves applicable state laws from federal preemption. The second clause, however, exempts from preemption "only 'the business of insurance' itself from the *antitrust laws.*" *Fabe,* — U.S. at —, 113 S.Ct. at 2209 (quoting § 2(b) of McCarran–Ferguson) (emphasis added).

Thus, the *Fabe* Court explicitly distinguished the first clause of § 2(b) from the second clause, making it clear that the first clause "is not so narrowly circumscribed" as the second clause of § 2(b). *Id.* As the Court stated,

> The language of § 2(b) is unambiguous: the first clause commits laws "enacted ... for the purpose of regulating the business of insurance" to the States, while the second clause exempts only "the business of insurance" itself from the antitrust laws. To equate laws "enacted ... for the purpose of regulating the business of insurance" with the "business of insurance" itself, as petitioner urges us to do, would be

to read words out of the statute. This we refuse to do.

*Id.* at ——, 113 S.Ct. at 2209–10 (footnote omitted).

The Court further disputed the allegation that it was violating a " 'basic rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.' " *Fabe,* —— U.S. at —— n. 6, 113 S.Ct. at 2210 n. 6. According to the Court, "[t]his argument might be plausible if the two clauses actually employed identical language." *Id.* As the Court illustrated, however, the two clauses do not use identical language, rather "the first clause contains the word 'purpose,' a term that is significantly missing from the second clause." *Id.* Failure to distinguish the first clause of § 2(b) from the second clause therefore "overlooks another maxim of statutory construction: 'that a court should "give effect, if possible, to every clause and word of a statute." ' " *Id.* (citations omitted). Therefore, the majority here cannot justify its failure to distinguish between the two parts of § 2(b) by "assur[ing]" us that the "business of insurance" has only one meaning. Maj. opinion at pp. 391–92.

Clearly, the first clause applies to a broader category of laws than the second clause. However the Court did more than "merely note" that the scope of the first and second clause of § 2(b) are "different," as the majority described the holding of *Fabe.* Maj. opinion at pp. 391–92. Rather, the *Fabe* Court described the first clause as applicable to "laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." *Id.* at ——, 113 S.Ct. at 2210 (citation omitted). "This category necessarily encompasses more than just the 'business of insurance.' " *Id.*

Several prominent cases before *Fabe* dealt with the "business of insurance" within the meaning of the second clause of § 2(b). *See Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647

(1982); *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). A tripartite test [1] consequently developed out of these cases when the second clause of § 2(b) was at issue. The district court in the case at hand understandably relied on *Pireno* 's tripartite test because *Fabe* had not yet been decided. In light of *Fabe,* however, I believe that both the district court's and the majority's reliance on *Pireno* is misplaced. For example, the majority relied on language from *Fabe* "that *Pireno* 'identified the three criteria … that *are* relevant in determining what activities constitute the "business of insurance." ' " Maj. opinion at p. 392 (quoting *Fabe,* —— U.S. at ——, 113 S.Ct. at 2208). However, this quotation appeared in the *Fabe* Court's presentation of the issues, *before* the Court actually analyzed *Pireno* and distinguished it from the Ohio statute then being considered. In its subsequent analysis of *Pireno,* the Court clearly limited the scope and application of *Pireno* 's tripartite test stating: "*Pireno* and *Royal Drug* held *only* that 'ancillary activities' that do not affect performance of the insurance contract or enforcement of contractual obligations do not enjoy the antitrust exemption for laws regulating the 'business of insurance.' " *Fabe,* —— U.S. at ——, 113 S.Ct. at 2209 (quoting *Pireno,* 458 U.S. at 134 n. 8, 102 S.Ct. at 3011 n. 8) (emphasis added). Furthermore, the Court distinguished the Ohio statute from *Pireno* stating that *Pireno* should "not [be] read … to suggest that the business of insurance is confined entirely to the writing of insurance contracts, as opposed to their performance." *Id.*

### D. McCarran-Ferguson Analysis—First Clause of § 2(b)

After the *Fabe* Court distinguished the first and second clauses of § 2(b) from one another, it further examined the history of McCarran–Ferguson to determine Congress's intent in drafting the first clause of § 2(b). Congress's reaction to the Supreme Court decision in *South–Eastern Underwriters* arose in part from its concern with the

---

1. Pursuant to *Pireno* 's tripartite test, the "business of insurance" under the second clause of § 2(b), is determined by considering the following:

   [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk;

second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Pireno,* 458 U.S. at 129, 102 S.Ct. at 3009.

nature of the insurance contract. In enacting McCarran–Ferguson, Congress intended for the contract between an insurer and its policyholder to be controlled and regulated by the state. The legislation was aimed at:

The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the "business of insurance."

*Securities and Exch. Comm'n v. National Secs., Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969).

### 1. Section 287: Enacted to Regulate the Business of Insurance

The proper standard to apply, therefore, when determining whether the Kentucky statute at issue falls within the intended scope of McCarran–Ferguson, is to examine whether the statute is centrally concerned with policyholders. Defendants allege that section 287 was enacted to regulate the business of insurance. According to *Fabe,* this means the statute must have been enacted to protect or regulate the relationship between the insurer and the policyholder.

According to the majority, section 287 merely regulates a group of people which it intended to prevent from entering the insurance industry. Such exclusion of a person from participation in an activity is not viewed by the majority as regulation of the activity itself. I do not agree with this concept.

The only other federal court to address this issue recently examined a Florida statute that prevented insurance agents associated in any way with a financial institution from engaging in insurance agency activities. *Barnett Banks v. Gallagher,* 839 F.Supp. 835 (M.D. Fla.1993). The Florida statute and section 287 therefore achieve the same goal—to prevent banks from selling general insurance—by slightly different means. Florida's statute restricted the activities of insurance agents while Kentucky's section 287 restricts the activities of bank holding companies. Like section 287, the Florida statute regulates a particular group of people by prohibiting them from entering the insurance industry. Unlike the majority in the case at hand, however, the court in *Barnett Banks* gauged the "larger intent" of the Florida statute and found the law was enacted to " 'further[ ] the interests' of the potential policyholding public, [to] regulate[ ] the potential policyholding public and, therefore, [was] a 'law enacted for the purpose of regulating the business of insurance' within the meaning of McCarran–Ferguson." *Barnett Banks,* 839 F.Supp. at 840–41 (quoting *Fabe* and § 2(b) of McCarran–Ferguson).

Even *if* the majority is correct in distinguishing statutes that regulate persons from those that regulate the manner in which an activity is conducted, it improperly fails to consider whether section 287 regulates the business of insurance indirectly. When Congress enacted the McCarran–Ferguson Act, it envisioned the "business of insurance" to focus upon those statutes "aimed at protecting or regulating [the relationship between insurer and policyholder], directly *or indirectly . . . ."* *National Secs.,* 393 U.S. at 460, 89 S.Ct. at 569 (emphasis added). Therefore, it is sufficient for the Kentucky legislature to indirectly govern the relationship between an insurance company and future policyholders by enacting a statute such as section 287 to regulate those persons the state wishes to exclude from the insurance industry. *See also Hoylake Inv. Ltd. v. Washburn,* 723 F.Supp. 42 (N.D.Ill.1989) (finding that an Illinois statute regulated the policyholder relationship in part because of the state's concern for the future solvency of its insurance companies). Whether a state chooses to regulate its insurance industry by prohibiting particular persons, entities, activities, or conduct—directly or indirectly—is immaterial. If the state aims to protect or regulate the insurer/insured relationship, it is regulating the business of insurance. *National Secs.,* 393 U.S. at 460, 89 S.Ct. at 569.

By enacting section 287, the Kentucky legislature likewise intended to protect and regulate the relationship between insurer and insured at its most basic level. In a 1981 Advisory Opinion the Kentucky Attorney General outlined the amendments which led to section 287 and stated that it was "the clear intent of the legislature to limit the involvement of majority bank shareholders, including one-bank holding companies, in insurance related activities." Ky.Op.Att'y Gen. 81–173 (1981). Later, a Kentucky House Resolution stated: "if banks were licensed to sell homeowners, automobile, and other lines of insurance, the consumer could feel coerced into purchasing insurance from the bank to obtain the loan regardless of the insurance premium." Ky.H.R. 91–SS–BR–198 (1991). The legislature enacted the statute out of a direct concern for future policyholders. It cannot be disputed, therefore, that section 287 was aimed to protect the insurance relationship between insurers and policyholders.

Obviously, the Kentucky legislature was concerned that if banks, national or state, were able to sell general insurance to their customers, the banks could unduly influence those Kentucky citizens and jeopardize the ability to pay claims when demands were made. *See Barnett Banks,* 839 F.Supp. at 840. The state has an important interest in protecting its citizens by ensuring that insurance companies remain solvent. *Id.* In an effort to protect the interests of its citizens, the Kentucky legislature should not be so constrained that all legislation intended to regulate the insurance industry, " 'directly or indirectly,' " must be located only within its Insurance Code. *National Secs.,* 393 U.S. at 460, 89 S.Ct. at 569.

The district court in the case at hand also was persuaded by plaintiffs' argument that section 287 does not regulate the business of insurance because it is not contained within Kentucky's Insurance Code, and is thus primarily intended to regulate bank holding companies rather than insurance. As the Supreme Court has said on this issue, however, " 'mere matters of form need not detain us.' " *Fabe,* —— U.S. at ——, 113 S.Ct. at 2210 (quoting *National Secs.,* 393 U.S. at 460, 89 S.Ct. at 568). It is not enough to state baldly that because the particular statute does not fall directly within the Insurance Code, it does not regulate the business of insurance. "Instead, the Court must attempt to gauge the larger intent and design" of section 287. *Barnett Banks,* 839 F.Supp. at 840.

Accordingly, it is enough that a state undertakes to regulate insurance generally for a specific statute or practice to fall within the meaning of McCarran–Ferguson. *McIlhenny v. American Title Ins. Co.,* 418 F.Supp. 364, 369 (E.D.Pa.1976). It is well-established that the McCarran–Ferguson Act's "state regulation" requirement is satisfied by the general undertaking by a state to regulate the insurance industry. *See Federal Trade Comm'n v. National Casualty Co.,* 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958); *Ohio AFL–CIO v. Insurance Rating Bd.,* 451 F.2d 1178 (6th Cir.1971), *cert. denied,* 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972). As illustrated by another circuit: "State power to regulate necessarily includes the discretion to prohibit, permit, or limit insurance practices as the state sees fit." *Dexter v. Equitable Life Assurance Soc'y,* 527 F.2d 233, 236 (2d Cir.1975).

It is my opinion, therefore, that the district court erred in its holding. Contrary to the majority's opinion, I believe that section 287 was enacted to regulate the business of insurance.

## 2. Section 92: Not Specifically Related to the Business of Insurance

The second step in this McCarran–Ferguson analysis is to determine whether § 92 "specifically relates to the business of insurance." McCarran–Ferguson § 2(b). Because it decided that section 287 was not enacted to regulate the business of insurance, the majority declined to consider this issue. However, there is little doubt that, as the district court determined below, § 92 does *not* specifically relate to the business of insurance. *Owensboro Nat'l Bank,* 803 F.Supp. at 34–35. Rather, § 92's "primary intent was to strengthen small national banks by providing them with an additional source of revenue." *Id.* (citations omitted). As the district court further stated, the mere fact that "the power granted to the national banks involves insurance does not transform this section into a regulation of the business

of insurance." *Id.* at 36. On this issue, the district court's analysis is sound and should be followed by this Court.

The plaintiffs maintain, however, that § 92 does specifically regulate the business of insurance. The Supreme Court has not been explicitly clear how "specific" a federal statute must be to preempt a state law which regulates the business of insurance. The *Fabe* Court came the closest to a firm definition in determining that McCarran–Ferguson calls for a "clear statement rule." *Fabe,* —— U.S. at ——, 113 S.Ct. at 2211. According to this rule, a federal statute such as § 92 must "clearly state" that it regulates the business of insurance or otherwise intends to preempt a contrary state law. *Id.* Upon examining the legislative history of McCarran–Ferguson, the Court found that only when "Congress, in its wisdom, [acted] specifically with reference to insurance in enacting the law" would such a law preempt any state statute enacted to regulate the business of insurance. *Id.* at —— n. 7, 113 S.Ct. at 2211 n. 7. Therefore, " 'no existing law and no future law should, by mere implication, be applied to the business of insurance.' " *Id.* (quoting 91 Cong.Rec. 1487 (1945)).

The context of § 92 has always been within the regulation of banking rather than insurance. In *United States Nat'l Bank of Oregon v. Independent Insurance Agents of America,* —— U.S. ——, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), in which the Court upheld the viability of § 92, the Court emphasized that § 92 was part of the Federal Reserve Act. *Id.* at ——, 113 S.Ct. at 2182. The court in *Barnett Banks* relied on the language of *Independent Ins. Agents* stating that § 92 was to be read in context with the other paragraphs around it and the fact that neither the *Independent Ins. Agents* Court nor Congress ever suggested that § 92 was specifically related to the business of insurance. Therefore, § 92 was found not to specifically relate to the business of insurance. *Barnett Banks,* 839 F.Supp. at 843.

Furthermore, no party has cited to any case in support of the contention that § 92 specifically relates to the business of insurance. The banks point to several cases in which other federal statutes were found to "specifically relate to the business of insurance" within the context of McCarran–Fer-

guson. None of these cases, however, is persuasive or applicable to the issue in this case. In *Hanover Ins. Co. v. Commissioner of Internal Revenue,* 598 F.2d 1211 (1st Cir.), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979), the statute at issue was an Internal Revenue Service provision dealing exclusively with the taxation of insurance companies. Partially because of the exclusive insurance nature of the statute and partially because the power of federal taxation was not delegated to the states in this instance, *Hanover* is not persuasive here.

In *Texas Employers' Ins. Ass'n v. Jackson,* 820 F.2d 1406 (5th Cir.1987), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989), the statute at issue was the Longshore and Harbor Workers Compensation Act (LHWCA). Again, the court in *Jackson* found overwhelming evidence within the language of the statute and its regulations to prove a pervasive regulation of the business of insurance. A similar pervasive intent to regulate the insurance business is not evident in § 92.

In *Hewlett–Packard Co. v. Barnes,* 571 F.2d 502 (9th Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978), an ERISA provision was at issue. Once again, however, regulation of the business of insurance pervades ERISA. Not only have numerous courts agreed that ERISA specifically relates to the business of insurance, ERISA's "deemer" clause explicitly exempts state employee benefit plans from the preemption language of McCarran–Ferguson.

Finally, plaintiffs and an amicus brief from the American Bankers Association argue that if section 287 is found to regulate the business of insurance, then § 92 must also be found to specifically relate to the business of insurance. According to plaintiffs, common sense dictates that the definition of § 2(b)'s "business of insurance" be applied equally to both Kentucky's section 287 and § 92. The plaintiffs' argument is flawed, however, in its disregard for the exact wording of the statute. *See supra* subsection II.C. Section 2(b) states that a federal statute must "specifically relate[ ] to the business of insurance." Although this phrase is not clearly defined, the Court in *Fabe* termed it a "clear statement rule." *Fabe,* —— U.S. at ——, 113

S.Ct. at 2211. It is apparent from the *Fabe* decision that an analysis of the first clause of § 2(b) requires a broader standard for the state statute at issue than for the federal statute at issue. Furthermore, cases such as *Fabe* reach the very result contested by plaintiffs—that a state statute can be found to regulate the business of insurance without also finding that the federal statute specifically relates to the business of insurance.

### III.

Consequently, I would find that McCarran–Ferguson prevents federal preemption of section 287 and I would reverse and remand on that basis.