### DEPOSIT GUARANTY NATIONAL BANK, Plaintiff,

v.

### George DALE, in his official capacity as Commissioner of the Mississippi Department of Insurance, Defendant.

Civil Action No. 3:95–CV–640WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 30, 1998.

Harold D. Miller, Jr., Emerson Barney Robinson, III, Larry Leroy Tyner, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Deposit Guaranty Nat. Bank.

Robert E. Sanders, Office of Atty. General, Jackson, MS, for George Dale.

Charles Greg Copeland, Copeland, Cook, Taylor & Bush, Jackson, MS, Ann M. Kappler, Jenner & Block, Washington, DC, for Mississippi Ass'n of Life Underwriters, Inc., Independent Ins. Agents of Mississippi, Professional Ins. Agents of Mississippi, amicus.

Ellen M. McElligott, Office of Comptroller of Currency, Washington, DC, for Comptroller of Currency, amicus.

John E. Hughes, III, Wells, Marble & Hurst, Jackson, MS, for American Council of Life Ins., amicus.

## ORDER

WINGATE, District Judge.

Before the court is the motion of the plaintiff, Deposit Guaranty National Bank (hereinafter "DGB"), for summary judgment pursuant to Rule 56(a)[1] of the Federal Rules of Civil Procedure. Plaintiff is seeking declaratory[2] and injunctive relief against

---

1. Rule 56(a) of the Federal Rules of Civil Procedure provides that, "[a] party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory Judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

2. Declaratory relief is sought in federal court pursuant to Title 28 U.S.C. § 2201 which provides in pertinent part that, "in a case of actual

the defendant George Dale, Mississippi's Commissioner of Insurance (hereinafter "Dale"), to enjoin him from enforcing those provisions of Mississippi Code Annotated §§ 83–17–227,[3] 83–17–229,[4] and 83–17–231,[5] which conflict with federal law. According to DGB, it is authorized by Title 12 U.S.C. § 92[6] of the National Bank Act to sell insurance from any of its branches in towns and/or municipalities having total populations of 5,000 persons or less. DGB further asserts that it has federal authorization to sell annuities from any branch location under the National Bank Act pursuant to Title 12 U.S.C. § 24 Seventh.[7] DGB and Dale agree that there are no genuine issues of material fact to be resolved and that there remains only a question of law to be determined by the court. That question of law focuses upon DGB's contention that the aforesaid Mississippi statutes should be wholly preempted by the conflicting provisions of the National Bank Act. Dale opposes DGB's broad interpretation of the preemptive effect of federal law. According to Dale, this broad view is erroneous, and any portions of the aforesaid Mississippi statutes which do not conflict with federal law should remain intact. inasmuch as DGB is seeking injunctive relief from state regulations or statutes on the basis of federal preemption, DGB has presented a federal question and this court's jurisdiction over this matter is predicated upon Title 28 U.S.C.

---

controversy within its jurisdiction, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

3. Miss.Code Ann. § 83–17–227 simply defines the terms lending institution, public utility, holding company, subsidiary, affiliate and credit life, health and accident insurance.

4. Miss.Code Ann. § 83–17–229 states in pertinent part that "[n]o lending institution, public utility or holding company located in any municipal corporation of this state which has a population of seven thousand (7,000) persons or more according to the last preceding federal census, nor any subsidiary, affiliate or branch of any such institution, utility or holding company, nor any officer or employee thereof, may directly or indirectly be licensed to sell insurance in this state...."

5. Miss.Code Ann. § 83–17–231 states that "[t]he insurance commissioner is authorized and directed to promulgate regulations in order to effectuate the purposes of sections 83–17–227 through 83–17–233, which are to help maintain the separation between lending institutions and public utilities and the insurance business and to minimize the possibilities of unfair competitive practices by lending institutions and public utilities against insurance companies, agents and brokers."

6. Title 12 U.S.C. § 92 provides in pertinent part that:

In addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company; (emphasis added).

7. The Comptroller of the Currency has typed annuity sales "incidental" to "the business of banking" under the National Bank Act, 12 U.S.C. § 24 Seventh which provides in pertinent part that, "[u]pon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—

*Seventh.* To exercise by its board of directors or duly authorized officers or agents; subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of title 62 of the Revised Statutes." (emphasis added)

*See NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Company,* 513 U.S. 251, 115 S.Ct. 810, 816, 130 L.Ed.2d 740 (1995). The Comptroller further concluded that annuities are not "insurance" within the meaning of Title 12 U.S.C. § 92. *Id.,* 115 S.Ct. at 817 (we further defer to the Comptroller's reasonable determination that 12 U.S.C. § 92 is not implicated because annuities are not insurance within the meaning of that section).

§ 1331.[8] *See Self-Insurance Institute of America, Inc. v. Korioth,* 53 F.3d 694, 695 (5th Cir.1995) (action under Title 28 U.S.C. § 2201 holding that plaintiff seeking injunctive relief from state regulation on the basis of federal preemption has presented a federal question).

## I. *Statement of the Issues*

This case involves a conflict between the aforesaid federal and state statutes governing the business activities of the national banking industry. The issues to be resolved in the instant case are whether, as contended by DGB, a national bank located in Mississippi may sell insurance as an agent in towns and municipalities having populations of 5,000 persons or fewer in accordance with Title 12 U.S.C. § 92, and whether any national bank located anywhere in Mississippi may broker annuities. It is undisputed that Dale, in enforcing Miss.Code Ann. §§ 83–17–227, 83–17–229, and 83–17–231, has not permitted DGB to sell insurance and annuities under any circumstances. originally, Dale contested DGB's contention that the Mississippi statutes in question are in direct conflict with federal law and are, therefore, preempted. However, Dale now concedes the point that the Mississippi statutes are preempted, but he objects to DGB's contention that the federal statutes sweep so broadly as to preempt the entirety of the Mississippi legislation. Only those parts in direct conflict with federal law, argues Dale, should be declared preempted, while the remaining portions of the Mississippi statutes should remain intact.

Mississippi Code Annotated Section 83–17–227 defines such terms as "lending institution," "public utility," "holding company," "subsidiary," "affiliate" and "credit life, health and accident insurance". This statute conflicts with federal law to the extent that it includes national banks in its definition of "lending institution" and also to the extent that it may purport to limit the licensing of national banks to sell insurance only to credit life, health and accident insurance necessary to secure repayment of loans. As shall be shown, the right of national banks (but not state banks) under federal law to sell insurance and annuities is far broader than the mere ability to sell in this narrowly limited area granted by state law.

Mississippi Code Annotated § 83–17–229 prohibits any lending institution (including national banks) from being licensed to sell insurance in any Mississippi municipal corporation which has a population of seven thousand persons or more. Thus, the Mississippi statute is broader than the federal law in that it permits a lending institution to be licensed to sell insurance in a municipal corporation having a population of not more than 7,000, notwithstanding the federal limitation under Title 12 U.S.C. § 92 that restricts this activity to municipalities with populations not exceeding 5,000 persons. However, the Mississippi statute also prohibits such business organizations as public utilities and holding companies from being licensed to sell insurance in municipal corporations having populations of more than 7,000 persons. These business organizations are not provided for in the federal statutes in question; thus, there is no federal preemption with regard to a State's regulation of public utilities and holding companies.

Mississippi Code Annotated § 83–17–231 enables the Commissioner of Insurance to promulgate regulations which help maintain the separation between lending institutions, public utilities and the insurance business. The purpose of such regulation, as stated in the statute itself, is to minimize the possibility of unfair competitive practices by lending institutions and public utilities against insurance companies. DGB complains that this statute has enabled Dale to restrict lending institutions from selling insurance and annuities in accordance with Title 12 U.S.C. §§ 24 Seventh and 92, and, for that reason, it must be preempted in toto.

## II. *Analysis*

 The analysis of the scope of a federal statute's preemption is guided by the oft-repeated comment, initially made in *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963), that "[t]he purpose of Congress is the ultimate

---

8. Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

touchstone" in every pre-emption case. See *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992)1 *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 112 S.Ct. 2374, 2381–82, 120 L.Ed.2d 73 (1992); and *Malone v. White Motor Corporation,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). Any understanding of the scope of a pre-emption statute must rest primarily on "a fair understanding of congressional purpose." *Cipollone,* 112 S.Ct. at 2624 n. 27. Congress' intent primarily is discerned from the language of the pre-emption statute and the "statutory framework" surrounding it. *Gade,* 112 S.Ct. at 2390. The court also must look to the "structure and purpose of the statute as a whole." *Id.,* 112 S.Ct. at 2383 (Justice O'Conner noting that the structure and purpose is revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law). A federal statute, for example, may create a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 1108, 134 L.Ed.2d 237 (1996), citing *Rice v. Santa Fe Elevator Corporation,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Alternatively, federal law may be in "irreconcilable conflict" with state law. *Id.,* 116 S.Ct. at 1109, citing *Rice v. Norman Williams Company,* 458 U.S. 654, 659, 102 S.Ct. 3294, 3298–3299, 73 L.Ed.2d 1042 (1982). Compliance with both statutes, for example, may be a "physical impossibility," *id.,* 116 S.Ct. at 1108, citing *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963); or, the state law may "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.,* 116 S.Ct. at 1108, citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

In the instant case, the state and federal statutes are not in total conflict with one another. The Mississippi statutes apply the prohibition against the sale of insurance to public utilities and holding companies in municipal corporations with populations greater than 7,000 persons. Regulation of these particular business organizations has not been preempted by the federal statutes in question. Furthermore, none of the Mississippi statutes specifically mentions annuities. Nevertheless, Dale has enforced the Mississippi statutes by interpreting them to prohibit sale of annuities by lending institutions under any circumstances. Dale now concedes that this interpretation of Mississippi law cannot stand against national banks in the face of Title 12 U.S.C. § 24 Seventh.

■ Therefore, it is clear that Title 12 U.S.C. § 92 authorizes national banks to engage in activities that the Mississippi statutes expressly forbid—the sale of insurance in small towns having populations of 5,000 persons or less. Thus, Mississippi's prohibition of this activity is clearly "an obstacle to the accomplishment" of one of the federal statute's purposes. Of course, if the federal or congressional purpose is merely to grant a national bank only a very limited permission, that is, permission to sell insurance to the extent that state law also grants permission to do so, then the Mississippi statutes would be in complete harmony with the federal statutes. However, this view was rejected by the United States Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson* where the Court stated that, "the Federal Statute's language suggests a broad, not a limited, permission. That language says, without relevant qualification, that national banks 'may ... act as the agent' for insurance sales. Title 12 U.S.C. § 92. It specifically refers to 'rules and regulations' that will govern such sales, while citing as their source not state law, but the federal Comptroller of the Currency." *Id.,* 116 S.Ct. at 1108. Therefore, the Mississippi statutes in question are preempted by federal law insofar as they prohibit national banks from being licensed to sell insurance in small towns having populations of 5,000 persons or less. This preemption does not affect Mississippi's right to regulate its own state banks, public utilities and holding companies under the statutes in question.

■ As for annuities, federal law authorizes national banks (but not state banks) to broker annuities under the National Bank Act, Title 12 U.S.C. § 24 (Seventh). *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 115 S.Ct. 810, 816, 130 L.Ed.2d 740 (1995). However, Dale's earlier interpretation of Mississippi Code Annotated § 83–17–229 prohibited national banks from engaging in such brokerage due to its classification of annuities am insurance. In *NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Company, supra*, the United States Supreme Court noted that the Comptroller of the Currency determined that "the business of banking" described in Title 12 U.S.C. § 24 Seventh covers brokerage of financial investment instruments and is not confined to the examples specifically enumerated in the statute. The Court found that the Comptroller reasonably concluded that the authority to sell annuities qualifies as part of, or incidental to, the business of banking. Any interpretation of the Mississippi statutes in question to the contrary by Mississippi's Commissioner of Insurance (Dale) is undermined by the federal statute which permits national banks (but not state banks) to sell annuities. Therefore, the Mississippi statutes in question also are preempted by federal law insofar as they prohibit national banks from selling annuities. once again, this preemption does not affect Mississippi's right to regulate state banks of any sort under the statutes in question, nor does it affect Mississippi's right to so regulate public utilities and holding companies.

Based on the foregoing, this court is persuaded not to declare the three Mississippi statutes to be preempted in toto. They are, therefore, preempted only to the extent that they are in direct conflict with federal law, interfere with a federal or congressional purpose, or to the extent that they have been interpreted in a manner which is contrary to federal law. This court takes its guidance from the United States Supreme Court's decision in *Dalton v. Little Rock Family Planning Services*, 516 U.S. 474, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996), wherein the Court reversed the Circuit Court's affirmance of a district court's blanket invalidation of state law. The *Dalton* Court noted that state law should be displaced only "to the extent that it actually conflicts with federal law," citing *Pacific Gas & Electric Company v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983); *Gade v. National Solid Wastes Management Association*, 505 U.S. 88, 109, 112 S.Ct. 2374, 2388–2389, 120 L.Ed.2d 73 (1992); and *Exxon Corporation v. Hunt*, 475 U.S. 355, 376, 106 S.Ct. 1103, 1116, 89 L.Ed.2d 364 (1986). "[T]he rule," said the Court, "[is] that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it," citing *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985).

### *CONCLUSION*

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish that there are no genuine issues of material fact and that the moving party is entitled to summary judgment as a matter of law. *Hightower v. Texas Hospital Association*, 65 F.3d 443 (5th Cir.1995), citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment requires not only determining whether there are material fact issues, but also, if there are none, whether the prevailing party is entitled to judgment as a matter of law. Both considerations are legal issues; neither is a finding of fact. *Douglass v. United Services Automobile Association*, 65 F.3d 452, 458 (5th Cir.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the instant case, DGB seeks total preemption of the Mississippi statutes in question. While DGB has met its burden of showing that there are no material fact issues to preclude granting summary judgment as a matter of law on the issue of preemption, it is clear from the foregoing authority that DGB is not entitled to have the Mississippi statutes declared to be preempted in toto. Therefore, the Commis-

sioner of Insurance for the state of Mississippi (Dale) is enjoined from interpreting and enforcing Mississippi Code Annotated §§ 83–17–227, 83–17–229, and 83–17–231 in any manner which interferes with a national bank's right to sell insurance as permitted by Title 12 U.S.C. § 92. Additionally, the Commissioner is hereby prohibited from interpreting and enforcing these statutes in any manner which would interfere with a national bank's right to sell annuities pursuant to Title 12 U.S.C. § 24 Seventh. DGB's motion for summary judgment is hereby denied insofar as it seeks to have declared preempted those portions of the statutes in question which pertain to state banks and lending institutions, public utilities and holding companies. Furthermore, Mississippi Code Annotated § 83–17–227 is preempted only to the extent that it purports to include national banks within its definition of a "lending institution," or purports to limit licensing of national banks to sell insurance in municipal corporations having populations of 5,000 persons or less only to "credit life, health and accident insurance" required to secure the repayment of loans.

**SO ORDERED AND ADJUDGED.**