ASSOCIATION OF BANKS
IN INSURANCE, INC.,
et al., Plaintiffs,

v.

Harold T. DURYEE, Defendant.

No. C–2–98–1120.

United States District Court,
S.D. Ohio,
Eastern Division.

June 18, 1999.

Kathleen M. Trafford, Porter, Wright, Morris & Arthur, Columbus, OH, for plaintiffs.

Ann Elizabeth Henkener, Ohio Attorney General, Columbus, OH, for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action for declaratory judgment and injunctive relief filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201. The plaintiffs are the Association of Banks in Insurance, Inc., the American Bankers Association, the Ohio Bankers Association, and the Huntington National Bank ("Huntington"). The defendant is Harold T. Duryee, who has been sued in his official capacity as Superintendent of the Ohio Department of Insurance. The Office of the Comptroller of the Currency of the United States ("OCC") has submitted a brief as *amicus curiae*. The Independent Insurance Agents of Ohio, Inc., the Ohio Association of Life Underwriters, the Ohio Association of Professional Insurance Agents, Inc., the Ohio Land Title Association, the Independent Insurance Agents of America, Inc., the National Association of Life Underwriters and the National Association of Professional Insurance Agents, Inc. (collectively referred to as "the intervenor defendants") have intervened in this action as defendants.

This action involves the right of a national bank under § 13 of the Federal Reserve Act, 12 U.S.C. § 92, to act as an insurance agent in places where the population does not exceed 5,000 inhabitants (hereinafter referred to as "small towns"). Section 92 provides in relevant part:

In addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company; and may receive for services so rendered such fees or commissions as may be agreed upon between the said association and the insurance company for which it may act as agent[.]

Plaintiffs seek a declaratory judgment holding that certain provisions of the Ohio Revised Code dealing with the licensing of insurance agents in Ohio are pre-empted under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2 by 12 U.S.C. § 92. Plaintiffs also seek injunctive relief enjoining the defendant Superintendent from enforcing these provisions against national banks to the extent that these provisions are pre-empted by federal law.

This matter is before the court on the plaintiffs' motion for summary judgment and the cross-motions for summary judgment filed by defendant Duryee and the intervenor defendants. The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The parties appear to agree that the issues presented to the court by the motions for summary judgment are primarily questions of law, and that there are no genuine issues of material fact.

The plaintiffs argue that certain provisions of the Ohio Revised Code governing the licensing of insurance agents are in conflict with the powers given to national banks under § 92 and that therefore § 92 pre-empts these state statutes. Specifically, plaintiffs contend that Ohio Revised Code §§ 3953.21(B), 3905.02(B), 3905.02(E)(1) and (2), 3905.03(A)(5), 3905.04, 3905.18(C) and (D), and 3905.18(G)(1) and (2) are pre-empted by federal law.

National banks are brought into existence under federal legislation, and are instruments of the federal government which are subject to the paramount authority of the United States. *M. Nahas Co., Inc. v. First National Bank Hot Springs,* 930 F.2d 608, 610 (8th Cir.1991). Thus, it is well established that any state law limiting the operation of national banks is preempted by federal law and invalid under the Supremacy Clause if the state law "expressly conflicts with the laws of the United States, and either frustrates the purpose of national legislation or impairs the efficiency of [national banks] to discharge the duties, for the performance of which they were created." *Davis v. Elmira Savings Bank,* 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700 (1896). Congress may confer power on the states to regulate national banks or may retain that power. *Independent Comm. Bankers Ass'n of South Dakota, Inc. v. Board of Governors of Federal Reserve System,* 820 F.2d 428, 436 (D.C.Cir.1987). The question is one of congressional intent, that is, did Congress, in enacting the federal law, intend to exercise its constitutionally delegated authority to set aside the laws of the state? *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–281, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). Absent explicit preemption language, courts must consider

802

whether the federal statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

■ The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County, Fla. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)). Federal law may pre-empt state law where it is in "irreconcilable conflict" with state law. *Rice v. Norman Williams Co.*, 458 U.S. 654, 659, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). This may occur where compliance with both statutes is an impossibility. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Pre-emption is also appropriate where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lawrence County v. Lead–Deadwood School Dist. No. 40–1*, 469 U.S. 256, 260, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

■ Where state and federal laws are inconsistent, the state law is pre-empted even if it was enacted by the state to protect its citizens or consumers. As the Supreme Court noted in *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 103, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), in holding that a state law designed to promote worker safety was pre-empted:

> In determining whether state law "stands as an obstacle" to the full implementation of a federal law, *Hines v. Davidowitz*, 312 U.S., at 67 [61 S.Ct. 399], "it is not enough to say that the ultimate goal of both federal and state law" is the same, *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 [107 S.Ct. 805, 93 L.Ed.2d 883] (1987). "A state law also is pre-empted if it inter-

feres with the methods by which the federal statute was designed to reach th[at] goal." *Ibid,;* see also *Michigan Canners & Freezers Assn., Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 477 [104 S.Ct. 2518, 81 L.Ed.2d 399] (1984).

*See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (holding that a state statute allegedly designed to prevent market distortion caused by false advertising of airfares was precluded by federal law pre-empting state regulation of the rates, routes or services of air carriers).

An additional pre-emption doctrine is relevant where the state law in question consists of insurance regulation. Under the provisions of the McCarran–Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.]" 15 U.S.C. § 1012(b).

In the context of pre-emption of state laws affecting national banks, the Supreme Court held in *Franklin National Bank v. New York*, 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954) that a state statute which prohibited the use of the word "savings" in bank advertising was pre-empted by federal law that authorized national banks to receive deposits without qualification or limitation. The Court noted that "competition for business finds advertising one of the most usual and useful of weapons" within the incidental powers granted to national banks. *Id.* at 377, 74 S.Ct. 550. The Court concluded that, despite the fact that consumers might be misled by the peculiar meaning of the term "savings" applicable in New York, the national banks "accept and pay interest on time deposits of people's savings, and they must be deemed to have the right to advertise that fact by using the commonly understood

description which Congress has specifically selected." *Id.* at 378, 74 S.Ct. 550.

Pre-emption in the area of national banks may occur even if compliance with both state and federal laws is possible where the state laws "infringe the national banking laws or impose an undue burden on the performance of the banks' functions." *Anderson National Bank v. Luckett,* 321 U.S. 233, 248, 64 S.Ct. 599, 88 L.Ed. 692 (1944). In *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the Supreme Court found that a state law which prohibited the use of due-on-sale clauses in loan instruments was preempted by a federal regulation that expressly granted to federal savings and loans the power to include such clauses in loan instruments, even though federal law merely permitted but did not compel federal savings and loans to include due-on-sale clauses in their contracts.

The Supreme Court recently addressed the issue of pre-emption under § 92 in *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). In that case, the Court held that § 92 pre-empted a Florida law which prohibited national banks serving small towns from selling insurance policies.

■ The Court in *Barnett Bank* noted that the statutes did not impose directly conflicting duties on national banks because § 92 merely permitted but did not require national banks to sell insurance. *Id.* at 31, 116 S.Ct. 1103. However, the Court stated that the language of § 92 "suggests a broad, not a limited, permission" for insurance sales, under the rules and regulations of the Comptroller of the Currency. *Id.* at 32, 116 S.Ct. 1103. The Court also referred to previous cases establishing a history of "interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Id.* at 32–34, 116 S.Ct. 1103. The Court

stated that "these cases take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Id.* at 33, 116 S.Ct. 1103. States retain the power to regulate national banks only where "doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Id.*

The Court also pointed to a 1916 letter to Congress from the Comptroller advocating the passage of § 92, and opined that the letter, which focused primarily on the small town national banks' need for additional revenue, "makes clear that authority to sell insurance in small towns is an added 'incidental power' of a national bank—a term that, in light of this Court's then-existing cases, suggested freedom from conflicting state regulation." *Id.* at 35–37, 116 S.Ct. 1103. The Court concluded that § 92 did not condition the sale of insurance by national banks on state permission. *Id.* at 35, 116 S.Ct. 1103.

■ The Supreme Court in *Barnett Bank* also addressed the issue of whether § 92 fell within the ambit of the McCarran–Ferguson Act's anti-pre-emption rule. The Court held that § 92 "specifically relates" to the business of insurance, and therefore falls within the scope of the "specifically relates" exception to the anti-pre-emption rule. *Id.* at 41, 116 S.Ct. 1103.

Following *Barnett Bank,* the court in *Deposit Guaranty National Bank v. Dale,* 28 F.Supp.2d 395 (S.D.Miss.1998) held that a Mississippi statute was pre-empted by § 92 insofar as it prohibited national banks from selling insurance. Similarly, in *New York Bankers Ass'n, Inc. v. Levin,* 999 F.Supp. 716, 719 (W.D.N.Y.1998), the court held that a New York statute which prohibited a bank-controlled insurance agent from selling insurance covering real or personal property which was the subject matter or security for a loan or extension of credit made by the bank was pre-empted by § 92 because it significantly inter-

fered with the national banks' federally conferred right to sell insurance products to their loan customers.

In a case which predated *Barnett Bank*, the Sixth Circuit in *Owensboro National Bank v. Stephens*, 44 F.3d 388 (6th Cir. 1994), addressed the issue of whether a Kentucky statute that barred bank holding companies and national banks from acting as insurance agents was pre-empted by § 92. The Sixth Circuit concluded that the state statute prohibited banks from acting as insurance agents, while § 92 allowed them to do so, and that therefore the state statute was pre-empted. The court noted that the Kentucky statute "interferes with the realization of the chief object of § 92," that being to increase the number of banks serving small towns by creating additional sources of revenue for such banks. *Owensboro National Bank*, 44 F.3d at 391. The court further concluded that the anti-pre-emption provision in 15 U.S.C. § 1012(b) did not apply because the Kentucky statute was not "enacted . . . for the purpose of regulating the business of insurance." The court noted that the Kentucky statute only operated to exclude banks from participation in insurance activities—"regulation of the person"—and in no way governed the manner in which activities constituting the "business of insurance" are conducted—"regulation of the activity." *Id.* at 392.

Keeping the above principles in mind, the court will address the arguments of the parties in regard to the statutes cited by the plaintiffs.

The defendant Superintendent first advocates a narrow reading of the Supreme Court's holding regarding the application of the McCarran–Ferguson Act's anti-pre-emption rule to matters under § 92. The Court held that § 92 "specifically relates"

to the business of insurance, and therefore falls within the scope of the "specifically relates" exception to the anti-pre-emption rule. *Barnett Bank*, 517 U.S. at 41, 116 S.Ct. 1103. Thus, it was the clear holding of the Court that the McCarran–Ferguson anti-pre-emption rules do not apply to the grant of authority to national banks under § 92 to sell insurance in small towns. This does not mean that all Ohio insurance regulations are automatically pre-empted. It simply means that in analyzing plaintiffs' pre-emption arguments, ordinary pre-emption rules apply.

Plaintiffs first contend that § 92 pre-empts Ohio Revised Code § 3953.21(B) insofar as it applies to national banks. Section 3953.21(B) provides:

> No bank, trust company, bank and trust company, or other lending institution, mortgage service, brokerage, mortgage guaranty company, escrow company, real estate company or any subsidiaries thereof or any individuals so engaged shall be permitted to act as an agent for a title insurance company.

The defendants agree that this state statute is pre-empted.[1] The plaintiffs are entitled summary judgment on this claim.

The next group of statutes challenged by the plaintiffs consists of Ohio Revised Code §§ 3905.02(B); 3905.03(A)(5), 3905.04, and 3905.18(C) and (D). Sections 3905–02(B), 3905.03(A)(5) and 3905.04 relate to the award of a license to sell insurance other than life insurance, while § 3905–18(C) relates to the grant of a license to sell life insurance. Section 3905–02(B) provides in relevant part:

> The superintendent of insurance shall issue to an applicant a license that states in substance that the person is authorized to do the business of an other than life insurance agent in this state, if the

---

1. The defendant Superintendent suggests that in light of his stipulation that § 3953.21(B) is pre-empted, no formal judgment or injunction need be entered on this branch of plaintiffs' complaint. However, particularly in view of the extensive history of state court litigation

tracing the efforts of national banks to become licensed as insurance agents in Ohio, the plaintiffs are entitled to the binding finality which the entry of a formal declaratory judgment and injunction will provide.

superintendent is satisfied that ... in applying for a license it is not the applicant's purpose or intention principally to solicit or place insurance on the applicant's own property or that of relatives, employers, or employees or that for which they or the applicant is agent, custodian, vendor, bailee, trustee, or payee[.]

Section 3905.03(A) governs the appointment of solicitors to represent the insurance agent. That section provides in relevant part:

Each agent that employs a person as a solicitor shall certify to the superintendent of insurance that the person is ... suitable to represent the agent. Upon written notice by any such agent that the agent has employed a person as a solicitor, the superintendent shall issue to the solicitor an appointment in the form prepared by the superintendent if the superintendent is satisfied that:

\*       \*       \*       \*       \*       \*

(5) It is not the solicitor's purpose or intention principally to solicit or place insurance on the solicitor's own property or that of relatives, employers, or employees or that for which they· or the solicitor is agent, custodian, vendor, bailee, trustee, or payee.

Section 3905.04 provides in relevant part:

The superintendent of insurance shall refuse to grant any license applied for, and shall revoke any license of or to any appointee, agent, solicitor, or foreign broker, when the superintendent is satisfied ·that the principal use of such license has been or is to procure, receive, or forward applications for insurance of any kind, other than life, or to solicit, place, or effect such insurance directly or indirectly upon or in connection with the property of such appointee, agent, foreign broker, or solicitor or that of relatives, employers, employees, or that for which they or the appointee, agent,

foreign broker, or solicitor are or is agent, custodian, vendor, bailee, trustee, or payee[.]

Section 3905.04 further authorizes the superintendent to investigate complaints of violations of the above provision and conduct hearings on the alleged violations.

Section 3905.18(C) provides in relevant part:

Upon written notice by a life insurance company authorized to transact business in this state of its appointment of a corporation, partnership, or limited liability company to act as its agent in this state, the superintendent of insurance shall furnish such corporation, partnership, or limited liability company with an application for agent's license which shall contain such questions as will enable the ·superintendent to determine ... that in applying for the license it is not the appointee's purpose or intention principally to solicit or place insurance on the lives of the appointee's officers, employees, or shareholders, or the lives of relatives of such officers, employees, or shareholders, or upon the lives of persons for whom they, their relatives, or the appointee is agent, custodian, vendor, bailee, trustee, or payee.

Section 3905.18(D) permits the superintendent of insurance to revoke the license of a life insurance agent if he finds that the principal use of the license has been to solicit, place, or effect insurance on the lives of persons in the above prohibited categories.

The above statutes incorporate what is known as the "principal purpose test." *See Independent Insurance Agents of Ohio, Inc. v. Fabe,* 63 Ohio St.3d 310, 313, 587 N.E.2d 814 (1992). Under this test, the superintendent of insurance is authorized to deny or revoke a license when he determines that the principal purpose of an agent's license is to solicit or place insurance on the life or property of one of the individuals named in the statutes.[2]

---

**2.** The superintendent previously required by

regulation that an applicant for licensure

The Ohio Supreme Court discussed the superintendent's use of the test in *Fabe*, 63 Ohio St.3d at 313, 587 N.E.2d 814:

> In applying the principal purpose test, the superintendent historically has. considered a variety of factors including a comparison of the agency's sales to persons falling within one or more of the enumerated legal relationships with the agency's total sales. If the agency's sales to persons falling within one or more of the enumerated legal relationships amounts to fifty-one percent or more of the total premium volume for any one calendar year, then the agency will be presumed to be in violation of the principal purpose prohibition contained in R.C. Chapter 3905.

The Ohio attorney general has issued an opinion regarding the principal purpose test. In 1988 Ohio Atty.Gen.Ops. 255, No. 88–056, 1988 Ohio AG LEXIS 56 * 47–52, attached as Exhibit A to the Comptroller's *amicus* brief, the attorney general discussed possible situations in which a bank's dealings with its customers could fall within the class of legal relationships referred to in the insurance statutes. The attorney general opined that a bank could be the payee of persons to which it extends credit, and that a bank could also act as a trustee of funds or an agent in financial transactions. The attorney general further indicated that a bank could be a bailee or custodian of property placed in a safe deposit box by a bank patron, and that a bank could occupy the position of vendor when it sells certificates of deposit, money market certificates, corporate securities, bonds, promissory notes, and other investment instruments. The attorney general also noted that the relationship between a bank and its general depositors was generally deemed to be a debtor-creditor relationship.

Plaintiffs contend that it is the intent of the national banks to sell insurance primarily to their customers. According to the affidavits of William K. Browning, Manager of Insurance Operations of Huntington Bancshares, inc., and Glen J. Milesko, President of Banc One Insurance Services Corp., an affiliate of Bank One, N.A., those national banks want to sell insurance to their customers. According to Mr. Browning, plaintiff Huntington intends to principally solicit and sell title insurance to persons applying for residential and commercial real estate loans, and it is likely that the majority of sales of title insurance would be to persons who are customers of the bank. Browning Affid., Paras. 11–12. Mr. Browning further states at paragraph 11 that title insurance is not typically advertised or solicited through media or direct mail.

█ The plaintiffs contend that the Ohio statutes pose a conflict with § 92 because of the banks' desire to market insurance primarily to their customers who are likely to fall within one of the restricted classifications under the Ohio statutes. The defendants argue in response that the Ohio statutes do not prohibit banks from selling insurance, and are therefore not in conflict with federal law. They note that *Barnett Bank* and subsequent cases have involved statutes which completely prohibited national banks from selling insurance.

It is true that the Ohio provisions incorporating the principal purpose test do not expressly prohibit the banks from becoming licensed to sell insurance. However, state laws need not completely prohibit

complete a certificate, under oath or affirmation, on a form provided by the department of insurance pertaining to the applicant's principal purpose. *See* Former Ohio Admin.Code § 3901–1–10(E)(2). Section 3901–1–10 has since been amended effective January 19, 1999 to delete the language concerning the principal purpose test. The plaintiffs contend that this does not affect the statutory requirements, and that the current application form continues to require applicants engaged in a business other than insurance to certify that it is not their intention to sell insurance principally to restricted persons, and to further state the percentage of annual premium income they expect to derive from sales to restricted persons.

federally protected conduct for pre-emption to occur. State regulation is permissible only if it "does not prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank*, 517 U.S. at 33, 116 S.Ct. 1103. Pre-emption may also be appropriate where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lawrence County*, 469 U.S. at 260, 105 S.Ct. 695.

The Ohio statutes do present a significant prerequisite for banks wanting to act as insurance agents. They require that over half of the premium income earned by the banks be generated through sales to persons not within the restricted categories. Since the banks intend to market insurance primarily to their own customers, many, if not most, of whom would fall within one of the restricted relationships, and since the Ohio statutes in this case would require the banks to sell at least fifty-one percent of their premium dollars to non-restricted persons, the statutes would require the banks to generate twice as much business as they actually want. Sales to non-bank customers would require the banks to invest significant resources in advertising, even though insurance is not typically marketed through traditional advertising media, and in otherwise trying to reach non-customers. As plaintiffs argue, the principal purpose test would force banks to engage in a general insurance business even though they can more efficiently and effectively sell insurance principally to bank customers, particularly loan customers who would most likely be in the market for purchasing insurance at the time they obtain the loan for the purchase of real or personal property.

Plaintiffs note that the licensing requirements would also require the banks to make in-depth inquiries of their insurance customers to ascertain if they fall within any of the prohibited categories. It would be particularly difficult to ascertain whether a customer fell within a prohibited category in the sale of life insurance, that is, the issuance of insurance on the lives of relatives of bank officers, employees, and shareholders, or on the lives of any person for whom the bank or the bank's officers, employees or shareholders or their relatives is an agent, custodian, vendor, bailee, trustee, or payee. *See* § 3905.18(C). For example, an application for life insurance filed by a person who had purchased a car from a bank shareholder who was also an automobile dealer, and who was therefore a vendor in relation to that person, would presumably fall within the purview of § 3905.18(C).

The bank would be required to keep detailed records as to which premium income was generated by restricted and unrestricted sales so as to be able to demonstrate to the superintendent that the total in restricted sales did not exceed the total for unrestricted sales. Further, even assuming that the banks were successful in obtaining licenses from the state to act as insurance agents, they would risk losing those licenses the first year they failed in their non-customer marketing endeavors and were unable to rebut the superintendent's fifty-one percent presumption. Precluding the national banks from marketing insurance primarily to their own customers substantially impairs the banks' powers to sell insurance under § 92.

The defendants contend that the Ohio statutes are safe from pre-emption because they do not discriminate against national banks, but rather are statutes of general applicability in that they apply to any applicant for an insurance agent's license. The plaintiffs respond that the Ohio statutes do discriminate against applicants for agent's licenses whose principal business is not insurance, such as national banks.

The defendants cite *Anderson National Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944) as support for the proposition that laws of general application are not subject to pre-emption. That case held that a state statute which required

banks, including national banks, to surrender unclaimed funds to the state was not pre-empted. However, that case involved state regulation of a facet of the bank's operations, not the threshold question involved here of whether the bank was authorized to do business at all. Regardless of whether the Ohio statutes discriminate against banks, the critical point here is that national banks are not like any other applicant for an agent's license. National banks are creations of federal law which have been endowed by Congress, through the enactment of § 92, with the authority to act as insurance agents in small towns. The Ohio laws at issue here, which significantly impair the entry of a national bank into the insurance field due to the fact that the bank's principal business is banking, are subject to pre-emption.

The defendants argue that the Ohio statutes should not be pre-empted because they would force national banks to market insurance to more consumers, resulting in broad-based competition in the insurance field. They contend that § 92 was enacted to ensure competition in the insurance industry. One result of § 92 might be increased competition in the insurance industry.[3] However, the Sixth Circuit noted in *Owensboro National Bank*, 44 F.3d at 391, that the chief object of § 92 was to increase the number of banks serving small towns by creating additional sources of revenue for such banks. That goal would not be served if, in order to comply with the principal purpose test, the national banks were forced to engage in costly advertising and other market strategies to attract customers outside of their best and most logical field of operation, their own customers.

The defendants also argue that the Ohio principal purpose test was designed to protect general insurance agents from un-

due or unfair competition, and to protect consumers from improper or coercive sales techniques, such as conditioning the approval of a loan or mortgage on the purchase of insurance from the lender. However, the fact that state legislation is motivated by a desire to protect the state's general insurance agents and its citizens in general or is an exercise of the state's police powers does not preclude federal pre-emption. *See, e.g., Gade*, 505 U.S. at 103, 112 S.Ct. 2374; *Morales*, 504 U.S. at 389, 112 S.Ct. 2031.

Further, as noted by the plaintiffs, federal pre-emption does not leave consumers without protection. There are other state provisions designed to prevent consumer abuse and unfair competition which plaintiffs agree are not pre-empted, such as Ohio Revised Code § 3918.11, which permits a consumer to obtain credit insurance from any source, and Ohio Revised Code § 3933.04, which prohibits requiring a consumer to obtain insurance from a particular source as a prerequisite for a sale or loan. There are similar "anti-tying" provisions in federal law, such as 12 U.S.C. § 1972, which prohibits national banks from conditioning the sale of credit, property or services on the purchase of other credit, property or services. Further, national banks operate under the supervision of the Comptroller, and are required to have adequate policies and procedures in place for monitoring and enforcing compliance with tying prohibitions.

The defendants offer a variety of suggestions as to how the national banks can operate reasonably within the bounds of the principal purpose test. The defendants suggest that the national banks can avoid the impact of the principal purpose test by selling insurance through an affiliate or subsidiary. For example, the defen-

---

**3.** Ironically, this would probably be an undesired result from the standpoint of the defendant intervenors. *See Fabe*, 63 Ohio St.3d at 313, 587 N.E.2d 814 ("This case is part of a 'turf battle' for insurance business."); *Alabama Ass'n of Ins. Agents v. Bd. of Governors*, 533 F.2d 224, 231 (5th Cir.1976) (noting a "huge commercial tug-of-war between the bank holding company industry on one hand and independent insurance agents and other insurance industry groups on the other.").

dants suggest that plaintiff Huntington could meet the principal purpose test by selling insurance to customers of the Huntington Mortgage Company.

Plaintiffs note that although federal law permits national banks to act through a subsidiary, see 12 C.F.R. § 5.34(d), § 92 does not require national banks to act through subsidiaries. Even assuming that the defendants' suggestion is accurate, it would seem that requiring national banks to incorporate an affiliate or subsidiary with its own employees, as opposed to making use of the existing staff in small town branches, might in itself entail a substantial financial expense which could weigh significantly against the expected revenue from the sale of insurance in that small town, and therefore significantly impair the bank's ability to sell insurance.[4]

In any event, the plaintiffs contend that the sale of insurance by a national bank through a subsidiary or affiliate would not avoid the application of the principal purpose test. Plaintiffs, citing 12 U.S.C. § 1843(c)(8), contend that general insurance agency activities cannot be conducted in an affiliate that is not a subsidiary of the bank. They further note that under OCC Advisory Letter 96–8, dated October 8, 1996, page 6, OCC Amicus Brief, Exhibit C, national banks are expected to take an active role in managing and monitoring insurance sales activities.

Under Fabe, 63 Ohio St.3d at 315, 587 N.E.2d 814, the superintendent is required to make a case-by-case determination and to deny the license where the subsidiary is "essentially the alter ego of its parent formed primarily for the purpose of circumventing state law." Fabe, 63 Ohio St.3d at 315, 587 N.E.2d 814 (citing State ex rel. Johnson & Higgins Co. v. Safford, 117 Ohio St. 576, 159 N.E. 829 (1927).) In Safford, a foreign corporation which, as a

non-resident, could not obtain a license to sell insurance, was found to be the alter ego of its Ohio subsidiary because it owned a majority of the stock of the subsidiary and formed the subsidiary to circumvent the residency requirement. Plaintiffs contend that since the Huntington Mortgage Company is a wholly-owned subsidiary of the Huntington, it would be deemed to be an alter ego of the Huntington, and sales to its customers would be treated like sales to the Huntington's customers. Under Fabe, any subsidiary owned and controlled or actively supervised by a national bank and formed for the purpose of circumventing the requirements of the principal purpose test would in all likelihood be considered the alter ego of the bank.

Defendants contend that a national bank could avoid the operation of the principle purpose test by selling primarily to its checking and savings deposit customers. The plaintiffs respond to this argument by contending that checking and savings customers typically have other relationships with the bank, and that attempting to market insurance to these customers would not guarantee satisfaction of the fifty-one percent quota needed to avoid the principal purpose test presumption.

The defendants also suggest that the banks could sell property and casualty insurance to the customers of other banks. While this option might help the banks meet the fifty-one percent quota, it is not a very realistic option, since the customers of other banks are more likely to buy insurance from the bank which gave them their loans.

The court concludes that the provisions implementing the principal purpose test "impair significantly" and "significantly interfere with the national bank's exercise of its powers" under § 92. Barnett Bank,

---

4. The court notes that in Independent Insurance Agents of Ohio, Inc. v. Fabe, No. 89AP–874 (10th Dist.unreported), 1990 WL 126290, *7, 1990 Ohio App. LEXIS 3872 *20 (Ohio App.1990), the court of appeals commented that when an insurance subsidiary retains the same employees as its vendor affiliate, the principal purpose limitation will apply to insurance placed on property sold by the vendor affiliate's employees to the extent that they are also employees of the insurance affiliate.

517 U.S. at 33, 116 S.Ct. 1103. The plaintiffs' motion for summary judgment on their claims relating to the principal purpose test is well taken.

■■■ The plaintiffs also contend that another provision in Ohio Revised Code § 3905.18(C) which requires the superintendent of insurance to determine whether a corporation seeking to act as the agent of a life insurance company "was organized for the purpose of acting as an insurance agent" should not be applied to national banks. Section 3905.18(C) provides that a license to act as a life insurance agent will be issued to the corporation unless the superintendent finds that "such corporation was not organized for such purpose[.]"

Federal law provides that "[a]ssociations *for carrying on the business of banking* under this chapter may be formed by any number of natural persons[.]" (Emphasis supplied.) Thus, by law, national banks must be formed "for carrying on the business of banking," not "for the purpose of acting as an insurance agent."

That is not to say that the "business of banking" in the case of national banks may not include acting as an insurance agent. As the Sixth Circuit noted in *Owensboro National Bank*, 44 F.3d at 391, § 92 "helps to define the powers of national banks" and "Congress has been understood to have the authority to define those powers since the Court's decision in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819)[.]"

The requirement in § 3905.18(C) that a corporation licensed as a life insurance agent be "organized for the purpose of acting as an insurance agent" is in direct conflict with the charter requirements for national banks, because it is a requirement with which the national banks, by law, cannot comply. Enforcement of the organization requirement in § 3905.18(C) against national banks would create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting § 92, and thus that

Ohio provision is pre-empted by federal law.

Finally, the plaintiffs argue that Ohio Revised Code § 3905.02(E)(1) and (2) and § 3905.18(G)(1) and (2) are pre-empted by § 92. The provisions of Section 3905.02(E)(1) and (2), which apply to other than life insurance agents, read as follows:

> (E)(1) The superintendent of insurance shall not issue or continue the license of a corporation, partnership, or limited liability company organized under the laws of this or any other state unless the corporation, partnership, or limited liability company is qualified to do business in this state under the applicable provisions of Title XVII [17] of the Revised Code.

> (2) The failure of a corporation, partnership, or limited liability company to be in good standing with the secretary of state or to maintain a valid appointment of statutory agent is grounds for suspension or revocation of its license.

Section 3905.18(G)(1) and (2) contain identical provisions which are applicable to life insurance agents.

Plaintiffs point to 12 U.S.C. § 26, which grants exclusive authority to the Comptroller of the Currency to determine whether a corporation or association is lawfully entitled to commence the business of banking. Plaintiffs argue that the state cannot condition the right of a national bank to act as an insurance agent on the bank's compliance with the formalities of Title XVII of the Ohio Revised Code or upon maintaining good standing with the Ohio secretary of state. They contend that the national bank's charter is sufficient confirmation of good corporate citizenship. Plaintiffs further cite to the Supreme Court's comment in *Barnett Bank*, 517 U.S. at 35, 116 S.Ct. 1103, that § 92's grant of authority to national banks to act as insurance agents in small towns "does not condition federal permission upon that of the State."

The defendants argue that the corporate qualification provisions are in the nature of consumer protection statutes which may be enforced against the national banks. The plaintiffs correctly note in response that federal pre-emption principles apply equally to state laws which were enacted to protect the public. *See, e.g., Gade,* 505 U.S. at 103, 112 S.Ct. 2374; *Morales,* 504 U.S. at 389, 112 S.Ct. 2031.

In *Bank of America, National Trust & Savings Ass'n v. Lima,* 103 F.Supp. 916 (D.Mass.1952), the court addressed the question of whether a national bank was required to comply with Massachusetts law governing a corporation's qualification to do business within the state. The court stated, *Id.* at 917–918:

> The bank in question is a national bank and an instrument of the national government. Its presence in the state is attributable to the national power, not to the state's permission. *First National Bank in St. Louis v. State of Missouri,* 263 U.S. 640, 666, 44 S.Ct. 213, 68 L.Ed. 486. It would therefore seem that any attempt by the state to block its entry until it complied with certain conditions would violate the constitution and laws of the United States. Neither states nor subdivisions thereof have the power to levy license fees on national banks (citations omitted) [.]

*See generally* 7 A.D. Kowalsky, K.A. Welch & M.J. Divine, *Michie on Banks and Banking* Ch. 15, § 5, at 25 (1989). It has also been held that a national bank may adopt any name that the Comptroller approves, *Third National Bank of Baltimore v. Teal,* 5 F. 503, 505 (C.C.D.Md. 1881), and that state laws pertaining to the use of a name as constituting trademark infringement and unfair competition are pre-empted as applied to a national bank, *Pioneer First Federal Sav. & Loan Ass'n v. Pioneer National Bank,* 659 P.2d 481, 98 Wash.2d 853 (1983). A state provision which barred a foreign corporation which failed to comply with the corporate qualification provisions from bringing suit in the state's courts was held to be inconsistent with 12 U.S.C. § 24, which grants to national banks the power "to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons." *Lima,* 103 F.Supp. at 918.

The intervenor defendants argue that the requirements for the registration of foreign corporations are mere formalities which would not have a significant impact upon the business of a national bank. However, an examination of the requirements for the licensing of foreign corporations contained in Chapter 1703 of Title XVII of the Ohio Revised Code reveals that the scope of these provisions is much broader.

A national bank can fall within Ohio law's definition of a "foreign corporation." A "foreign corporation" includes a "bank, savings bank, or savings and loan association chartered under the laws of the United States, the main office of which is located in another state." Ohio Revised Code § 1703.01(B). Under Ohio Revised Code § 1703.03, no foreign corporation may transact business in the state unless it holds an unexpired and uncanceled license to do so issued by the secretary of state. In order to obtain a license, a foreign corporation must file an application, pay a filing fee, and comply with all other requirements of law regarding the maintenance of the license contained in §§ 1703.01 to 1703.31. § 1703.03.

To become licensed, a foreign corporation must file an application containing certain information and pay a filing fee of $100. Ohio Revised Code § 1703.04(C). A license application will not be accepted if it appears that the name of the foreign corporation is prohibited by law or is not distinguishable from the name of another corporation licensed to do business in the state. Ohio Revised Code § 1703.04(D). The foreign corporation is required to appoint and maintain a designated agent for service of process within the state. Ohio Revised Code § 1703.04.1.

Ohio Revised Code § 1703.15 provides that a foreign corporation may not trans-

act business in Ohio which could not be lawfully transacted by a domestic corporation. In the event that the Ohio secretary of state determines that a foreign corporation is transacting business in the state that a domestic corporation could not lawfully transact or is transacting business under an improper name, the secretary is required to cancel the license of the foreign corporation to transact business in the state. § 1703.15.

The above provisions constitute impermissible conditions upon the ability of a national bank to do business within the state. Further, as the instant case illustrates, there may be instances where a national bank would be authorized to transact business which could not legally under state law be transacted by a domestic corporation. Granting the authority to determine whether a foreign national bank has exceeded the scope of its authority to the Ohio secretary of state rather than the Comptroller of the Currency, who is charged under federal law with that responsibility, constitutes an unconstitutional impingement on the authority of the Comptroller.

The Ohio legislature must have anticipated that there might be constitutional problems with requiring national banks to comply with the state's foreign corporation licensing laws, because it enacted Ohio Revised Code § 1703.03.1, effective May 21, 1997. That section provides that "[i]f the laws of the United States prohibit, preempt, or otherwise eliminate the licensing requirement of sections 1703.01 to 1703.31 of the Revised Code with respect to a corporation that is a bank, savings bank, or savings and loan association chartered under the laws of the United States," then such bank is required only to file a notice providing certain information such as the name of the corporation and its business address and appointing a designated agent. Even § 1703.03.1 contains some questionable provisions, such as the requirement that the notice be accompanied by a $100 filing fee. However, § 1703.03.1 does not provide for the issu-

ance or revocation of a license, nor does it expressly state that the filing of the notice is a prerequisite for doing business in the state. Although couched in mandatory terms, the statute provides for no mechanism for its enforcement and no consequences for a failure to comply with its terms.

■ Thus, compliance with § 1703.03.1 is technically not a licensing requirement for becoming "qualified to do business in this state under the applicable provisions of Title XVII" within the meaning of §§ 3905.02(E)(1) and (2) and 3905.18(G)(1) and (2). Since the parties have not fully addressed the extent, if any, to which a national bank would be bound to follow the notice provisions of § 1703.03.1, the court will not resolve that issue here. However, the court does conclude that under the Supremacy Clause, national banks would not be bound by the licensing requirements for foreign corporations found in Ohio Revised Code §§ 1703.01 through 1703.31, and that to the extent that those licensing requirements are incorporated into §§ 3905.02(E)(1) and (2) and 3905.18(G)(1) and (2), those sections, insofar as they would be applied to national banks, are pre-empted by federal law.

Finally, the defendant Superintendent raises the specter that if plaintiffs' pre-emption arguments are accepted, it will open the floodgates to a host of findings that the national banks are not subject to other regulations such as fire codes, civil rights laws, or zoning laws. However, pre-emption arguments are appropriately addressed on a statute-by-statute basis. The plaintiffs in this case do not contest the application to national banks of all Ohio provisions regulating the insurance industry. The plaintiffs in this case have directed their pre-emption arguments at certain discrete statutory provisions, and only those provisions are at issue before this court.

In accordance with the foregoing, the court finds that plaintiffs' motion for summary judgment is well taken and it is hereby granted. The cross-motions for

summary judgment of the defendant Superintendent and the defendant intervenors are hereby denied.

The clerk shall enter a declaratory judgement in favor of the plaintiffs, as follows:

1) The provisions of Ohio Revised Code § 3953.21(B) are pre-empted by 12 U.S.C. § 92 to the extent that § 3953.21(B) prohibits the licensure of a national bank, located and doing business in a town with a population of 5,000 inhabitants or less, to act as an agent for a title insurance company.

2) The provisions of Ohio Revised Code §§ 3905.02(B), 3905.03(A)(5), 3905.04, and 3905.18(C) and (D) relating to the principal purpose test, and any rules, regulations, bulletins or guidelines promulgated by the Superintendent of Insurance to implement or enforce the principal purpose test are pre-empted by 12 U.S.C. § 92 to the extent that the principal purpose test is applied to restrict the power of a national bank, located and doing business in a town with a population of 5,000 inhabitants or less, to sell insurance.

3) The provisions of Ohio Revised Code §§ 3905.02(E)(1) and (2), 3905.18(G)(1) and (2) and 3905.18(C) are pre-empted by 12 U.S.C. § 92 to the extent that they seek to condition the licensure of national banks located and doing business in towns with a population of 5,000 or less inhabitants upon such banks qualifying and being licensed as a foreign corporation to do business in Ohio, remaining in good standing with the Ohio secretary of state, or organizing specifically for the purpose of acting as an insurance agent.

The defendant Superintendent of Insurance is hereby:

1) Permanently enjoined from enforcing the provisions of Ohio Revised Code § 3953.21(B) against national banks located and doing business in towns with a population of 5,000 or less inhabitants.

2) Permanently enjoined from enforcing the principal purpose test provisions contained in Ohio Revised Code §§ 3905.02(B), 3905.03(A)(5), 3905.04, and 3905.18(C) and (D) and any rules, regulations, bulletins or guidelines promulgated by the Superintendent of Insurance to implement or enforce the principal purpose test against national banks located and doing business in towns with a population of 5,000 or less inhabitants in the insurance license application process and in the selling of insurance in Ohio.

3) Permanently enjoined from using Ohio Revised Code §§ 3905.02(E)(1) and (2), 3905.18(G)(1) and (2) and 3905.18(C) to condition the licensure as insurance agents of national banks located and doing business in towns with a population of 5,000 or less inhabitants upon such banks qualifying and being licensed as a foreign corporation to do business in Ohio, remaining in good standing with the Ohio secretary of state, or organizing specifically for the purpose of acting as an insurance agent.

The costs of this action are assessed against the defendants and the intervenor defendants.

It is so ordered.